## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

GERALD CELESTINE, INDIVIDUALLY    *
AND O/B/O HIS MINOR CHILDREN,    *
G.C. AND J.C.    *    **CIVIL ACTION NO.:**
   *
**VERSUS**    *
   *
LAFAYETTE CITY-PARISH    *
CONSOLIDATED GOVERNMENT,    *    **JURY TRIAL DEMAND**
SCOTT MORGAN, INDIVIDUALLY    *
AND IN HIS CAPACITY AS FORMER    *
CHIEF OF POLICE OF THE    *
LAFAYETTE POLICE DEPARTMENT;    *
JOHN DOE 1, JOHN DOE 2,    *
JOHN DOE 3, JOHN DOE 4, JOHN    *
DOE 5, ABC INSURANCE COMPANY    *
   *
*******************************************************************************

## COMPLAINT WITH JURY DEMAND

**NOW INTO COURT,** through undersigned counsel, comes the Petitioner, Gerald

Celestine, Individually and On Behalf of His Minor Children, G.C. and J.C., a person of the full

age of majority and domiciled in Lafayette Parish, State of Louisiana, who respectfully represents

the following:

1.

Made Defendants herein are the following:

     a) LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT (hereinafter "LCG"), a local government entity and body politically created by statute, being a municipality, and political subdivision of the State of Louisiana, but not an agency, or department, or arm of the State of Louisiana, and owns, operates, manages, directs, and controls the LAFAYETTE POLICE DEPARTMENT ("LPD"), which employs Defendant Chief Morgan and Defendants John Doe #1 - #5;

     b) SCOTT MORGAN (hereinafter, "Chief Morgan"), was at all relevant times to this Complaint the Chief of Police of the Lafayette Police Department ("LPD"), and is a person of full age and majority and domiciled in Lafayette Parish. He is sued in his individual and official capacity;

1

c) JOHN DOE #1, was at all relevant times to this Complaint a police officer in the Lafayette Police Department, is a person of full age and of majority, domiciled in Lafayette Parish. He is sued in his individual capacity;

d) JOHN DOE #2, was at all relevant times to this Complaint a police officer in the Lafayette Police Department, is a person of full age and of majority, domiciled in Lafayette Parish. S/he is sued in his individual capacity;

e) JOHN DOE #3, was at all relevant times to this Complaint a police officer in the Lafayette Police Department, is a person of full age and of majority, domiciled in Lafayette Parish. S/he is sued in his individual capacity;

f) JOHN DOE #4, was at all relevant times to this Complaint a police officer in the Lafayette Police Department, is a person of full age and of majority, domiciled in Lafayette Parish. S/he is sued in his individual capacity;

g) JOHN DOE #5, was at all relevant times to this Complaint a police officer in the Lafayette Police Department, is a person of full age and of majority, domiciled in Lafayette Parish. S/he is sued in his individual capacity;

h) ABC INSURANCE COMPANY, an insurance company authorized to do, and doing business in the State of Louisiana providing general liability coverage for Chief Morgan, Defendants John Does #1 - #5, the LPD, and/or LCG for any and all acts and damages occurring from the incidents giving rise to this Complaint.

i) At all times relevant to this Complaint, all Defendants acted under the color of state law.

j) THIS PETITION PUTS ON NOTICE ANY EXCESS POLICY COVERING THE LAFAYETTE CONSOLIDATED GOVERNMENT, THE LAFAYETTE POLICE DEPARTMENT, CHIEF SCOTT MORGAN, ANY EMPLOYEE OF THE LAFAYETTE POLICE DEPARTMENT, AND ANY POTENTIAL UNION POLICY COVERING THE INDIVIDUAL LOUISIANA POLICE DEPARTMENT NAMED INDIVIDUALLY IN THIS SUIT.

## JURISDICTION AND VENUE

2.

The United States District Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. 1983 and 28 U.S.C. 1331, 1343(a)(3), and 1367(a).

3.

The Western District of Louisiana is the appropriate venue to bring this Complaint, because the facts that give rise to Petitioner's claims all took place within the Western District of Louisiana.

**FACTUAL ALLEGATIONS SURROUNDING SEPTEMBER 5, 2020**

4.

At all times relevant to this Complaint, all of the Defendants—Chief Morgan, LCG, John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5—conspired and acted in concert together to injure the Petitioner and his minor children, and all of these Defendants are jointly, severally, and/or *in solido* liable to and responsible for the Petitioner and his minor children's injuries and damages. Defendants John Doe #1 - #5 were all law enforcement agents allegedly responding to a report of a male displaying a gun to children in the parking lot of the Acadiana Lanes bowling alley, which resulted in the use of excessive force and injuries against J.C. and G.C. described herein.

5.

Upon information and belief, on the night of September 5, 2020, Defendant police officers John Does #1 - #5 responded to a report of a man with a gun in the 3200 block of Ambassador Caffery Parkway in Lafayette, Louisiana.

6.

When Defendant police officers John Doe #1 - #5 arrived at the scene, there was no one who matched the reported description of the person with a gun, and the officers didn't find anyone with a gun, so the LPD officers left the scene.

7.

Shortly thereafter, around 30 minutes later, and upon information and belief, Defendant police officers John Doe #1 - #5 conducted an unrelated traffic stop at the same location (3200

block of Ambassador Caffery Parkway). At that time, John Doe #1, John Doe #2, John Doe #3, John Doe #4, and/or John Doe #5 noticed 16-year-old J.C. waiting in line outside Acadiana Lanes bowling alley with his twin brother, G.C., and other teenage friends.

8.

J.C. and G.C. are both African American. As J.C. and G.C. were patiently and lawfully waiting in line outside of the bowling alley, one of the John Doe Defendant police officers approached J.C., immediately arrested him, and escorted him behind the LPD unit parked in the lot adjacent to the sidewalk.

9.

At the time J.C. was arrested, there was no evidence of or reports that J.C. had a gun or any other weapon on his person, and nor were there any reports or complaints that J.C. had engaged or was engaging in illegal activity.

10.

After J.C. was arrested and escorted away, members of the public began questioning John Doe #1 and/or the other John Doe Defendant officers about why J.C. had been placed under arrest.

11.

Additionally, J.C.'s brother, G.C., calmly and rationally approached one or more of the Defendant John Doe #1 - #5 police officers and inquired why his brother, J.C., was being arrested.

12.

When G.C. approached the Defendant police officers, John Doe #1 yelled at G.C. screaming "get off me" and forcefully pushed G.C. in his chest.

13.

Although John Doe #1 screamed at G.C. to get off of him, bystander video of the subject incident shows that G.C. was not "on" John Doe #1 at any time.

14.

At no time did anyone, including G.C., touch or otherwise interfere with the actions or duties of the Defendant police officers John Does #1 - #5.

15.

Nevertheless, John Doe #1 then grabbed the front of G.C.'s shirt and aggressively forced G.C. backwards from the edge of the sidewalk to the door of the bowling alley where he violently slammed G.C.'s back into the glass door of the bowling alley entrance.

16.

John Doe #2 and John Doe #3 then rushed over and held G.C. down as John Doe #1 repeatedly and brutally punched G.C. in his face and head at least five (5) times with a closed fist.

17.

John Doe #2 held one of G.C.'s arms behind his back while John Doe #3 crouched on G.C.'s other side.

18.

A crowd of people standing on the sidewalk nearby screamed and pleaded for John Doe #1 to stop the unjustified and excessive use of force against G.C.

19.

Upon information and belief, John Doe #4 and John Doe #5 were present, were standing/located in close proximity of, observed, and witnessed the unlawful actions and excessive use of force committed by John Doe #1, John Doe #2, and John Doe #3 on G.C.

20.

5

Despite observing and witnessing the unlawful and unjustified actions of John Doe #1, John Doe #2, and John Doe #3, Defendant officers John Doe #4 and John Doe #5 never intervened and failed to take any action to deescalate the situation or otherwise take any action to stop John Doe #1, John Doe #2, and John Doe #3 from engaging in their unjustified and illegal use of excessive force being committed against G.C.

21.

Instead, John Doe #4 and John Doe #5 stood guard over John Doe #1, John Doe #2, and John Doe #3 while John Does #2 - #3 held down G.C., allowing John Doe #1 to brutally attack, punch, and beat G.C. while he laid helplessly pinned down to the ground.

22.

John Doe #2 and John Doe #3 also failed to intervene and stop John Doe #1 from continuing to use unlawful excessive force against G.C., but instead helped John Doe #1 commit and continue the unlawful use of excessive force against G.C. by holding G.C. down to the ground.

23.

As G.C. laid limp on the ground, John Doe #1 stood over G.C., while John Doe #2 and John Doe #3 placed handcuffs on G.C. and pulled him up from the ground.

24.

G.C. was charged with interfering with a police investigation, resisting arrest, and battery of a police officer.

25.

At no time during the arrest of J.C. and G.C. was a gun ever found on either J.C. or G.C., and nor was any weapon found anywhere at the scene.

26.

Upon information and belief, John Doe #1, John Doe #2, John Doe #3, John Doe #4, and/or John Doe #5 had been involved in a previous altercation with J.C. and/or G.C.—specifically, one of the Defendant John Doe officers used a taser against J.C. or G.C.—and J.C. and/or G.C. appear to have been targeted by one or more of the John Doe officer Defendants #without any provocation or legal justification.

### FACTUAL ALLEGATIONS SURROUNDING EMPLOYMENT, TRAINING, SUPERVISION, AND DISCIPLINE OF LPD OFFICERS

27.

Defendant LCG utilizes and employs its own police department known as the Lafayette Police Department (LPD). At all times relevant to this Complaint and the incident giving rise to this complaint, Defendant Scott Morgan was the Chief of Police for the LPD, making him the responsible decisionmaker and policymaker for the LPD and the LPD police officers, including Defendant police officers John Does #1 - #5.

28.

In his official capacity, Chief Morgan was also responsible for adopting, implementing, promulgating, and enforcing policies, customs, and practices pertaining to making arrests and preserving peace in the City of Lafayette.

29.

Additionally, in his official capacity, Chief Morgan was responsible for the screening, hiring, disciplining, reprimanding, training, supervising, and the retraining of Lafayette Police Officers to ensure each officer was and is qualified and properly trained to perform the duties and functions of a peace officer including making arrests, preserving the peace, and the constitutional use of force.

30.

Chief Morgan had a responsibility in supervising and enforcing and implementing these training, discipline, and enforcement of these policies, customs, practices.

31.

In Chief Morgan's official capacity, he was responsible for investigating use of force incidents involving LPD officers, as well as reprimanding and disciplining LPD officers, including Defendant police officers John Does #1 - #5, who use excessive force and/or who fail to intervene when present during the use of excessive force committed by fellow LPD officers.

32.

Based on the extreme misconduct of Defendant John Does #1 - #5 and upon information and belief, Defendant Chief Morgan and Defendant LCG did not properly or adequately examine and scrutinize the background of Defendants John Doe #1, John Doe #2, John Doe #3, John Doe #4, and/or John Doe #5 to ensure that these officers could properly and legally carry out their duties as a police officer for the LPD.

33.

Based on the misconduct of Defendants John Does #1 - #5 and upon information and belief, Defendant Chief Morgan and Defendant LCG did not properly train, supervise, and/or discipline Defendants John Doe #1 - #5 with regard to proper police practices, including the use of excessive force when effecting arrests and the requisite probable cause necessary to constitutionally effectuate such an arrest.

34.

Upon information and belief, in willful, reckless, and callous disregard to J.C. and G.C.'s safety and rights under federal and state law, Chief Morgan and LCG did not have an adequately trained upon, promulgated, and enforced use of excessive force policy in place for the City of

Lafayette at all relevant times upon which officers, including John Does #1 - #5,  were sufficiently or adequately trained so as to know when the use of force is appropriate and/or when to intervene during the use of illegal, excessive use of force.

35.

Upon information and belief, in willful, reckless, and callous disregard to J.C. and G.C.'s safety and rights under federal and state law, Chief Morgan and LCG did not have an adequately trained upon, promulgated, and enforced de-escalation policy in place for the City of Lafayette at all relevant times upon which officers, including John Does #1 - #5, were sufficiently or adequately trained so as to know how to properly de-escalate situations.

36.

Despite Lafayette Parish being a majority white/Caucasian Parish, there is an overt policy and practice whereby people of color are disproportionately stopped, detained, harassed, subjected to use of force, and shot by LPD officers.

37.

Between 2010 and 2019, statistics published by LPD show 1,172 use of force reports submitted by LPD officers, equating to one approximately every three days.

38.

In this same time period, data published by LPD show a pattern, custom, and practice of excessive use of force, including improper use of lethal force. According to their own statistics, between 2010 and 2019, there were 107 civil lawsuits filed against LPD.

39.

These lawsuits contain repeated allegations of excessive use of force and improper use of lethal force:

(a) In 2007, LPD was sued through LCG for putting a man in a chokehold— causing him to almost pass out, dragging him to a police car, and calling him a "stupid n***a;"

(b) In 2009, LPD was sued through LCG for killing a black man in a parking lot who was being approached for suspicion of the non-violent crime of auto theft;

(c) Also in 2009, LPD was sued through LCG for knocking a man down with such force that it rendered him unconscious, and refusing him necessary medications, which caused him to suffer seizures;

(d) In 2010, LPD, through the LCG, settled a suit wherein an officer put a man in a chokehold, drug him to police car, and called him a "stupid n***a;" the man almost passed out from loss of oxygen;

(e) In 2011, LPD was sued through the LCG and settled a case for snapping a motorist's arm bone in half during a traffic stop;

(f) In 2012, LPD was sued through LCG for tackling a woman from behind who was already handcuffed;

(g) In 2012, LPD was sued through LCG for wrestling a man to the ground in Wal-Mart and putting him in a chokehold;

(h) Also in 2012, LPD was sued through LCG for stopping a man as he crossed the street, striking him with elbows, knees and fists, and kicking him in the face;

(i) In 2013, LPD was sued through LCG for shooting and killing a man who witnesses said was running away when shot;

(j) In 2016, LPD was sued through LCG for fatally shooting a man in the back as he fled a pursuit;

(k) Also in 2016, LPD was sued through LCG for officers repeatedly harassing battering two teenage brothers;

(l) In 2017, the ACLU sued LPD through the LCG for taking a woman's camera who was documenting the violence of LPD officers against her son and deleting the evidence of their excessive force from the camera;

(m) In 2020, LPD was sued through LCG for the fatal shooting of a mentally ill man who was calmly walking away from officers, posing no danger to others;

(n) In 2021, LPD was sued through LCG for the violent arrest of an unarmed man sitting on a curb that resulted in him being tackled with such force that his head was brutally smashed into the concrete, causing extreme injury. In fact, one of the LPD officers who allegedly committed the unlawful use of force against the victim could be heard

speaking to another officer on body camera video saying he would "have Sarge do a use of force to cover both of our asses."

40.

Numerous other lawsuits have been filed in federal court alone detailing excessive use of force, improper training, improper hiring, and improper discipline against LPD.

41.

Additionally, in 2012, the LPD was sued for their lack of supervision and proper discretion in hiring and training officers, for their misconduct, and handling of evidence. Specifically, the plaintiffs alleged that the leadership of LPD "created, fostered, engendered, and . . .  supported a police department which is fundamentally 'rotten to the core'" and "outright concealment of police misconduct, retaliations, retributions, and reprisals against those who report such misconduct, a gross distortion of the truth."

42.

In 2020, an LPD officer yanked a woman from his police SUV and hogtied her as she lay face-down, bleeding in the street. The officer's force caused her to hit her chin on the floorboard and street, sustaining broken ribs and an injury to her chin.

43.

The above lawsuits and events demonstrate that the incident with J.C. and G.C. is not an outlier but rather part of a continuing pattern, custom, and practice of LPD as part of LCG targeting African Americans and other individuals and then committing excessive and unjustified use of force against such African Americans and other individuals.

44.

Upon information and belief, Chief Morgan and the LPD, as part of LCG, has not changed their hiring, training, or supervision policies and their enforcement despite this subject incident

and the numerous use of force complaints and lawsuits filed against the LCG and its police department officers and police chief.

45.

Further, Chief Morgan and the LPD, as part of LCG, has a history of not properly or adequately disciplining or firing officers, including Defendants John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5, when they engage in illegal or improper conduct, including making arrests without probable cause and using excessive force against citizens when effecting an arrest.

46.

Upon information and belief, Chief Morgan investigated the subject incident giving rise to this lawsuit, but did not properly or adequately discipline or reprimand Defendants officers John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5 for their actions involving J.C. and G.C.

47.

In addition to the numerous complaints and lawsuits alleging the use of unjustified excessive force by LPD police officers, Defendant officers John Doe #1, John Doe #2, John Doe #3 use of excessive force against G.C. in this case is evidence of and show a clear pattern of the LPD's use of excessive, unjustified, and improper force against citizens of/in Lafayette Parish, such as J.C. and G.C.

48.

Defendants John Does #1 - #5 extreme misconduct and use of excessive force and failure to intervene during the use of excessive force was a product of this environment and undertaken pursuant to de facto policies, practices, and/or customs—both written and unwritten—of the LPD,

the LCG, and Chief Morgan. Chief Morgan and/or the LCG are guilty of the following wrongful

acts, including but not limited to:

1. Failing to properly hire, supervise, and train LPD officers, including John Does #1 - #5;

2. Failure to promulgate, train, and enforce an adequate and constitutional use of force policy;

3. Failure to promulgate, train, and enforce an adequate and constitutional de-escalation tactics;

4. Failure to promulgate, train, and enforce an adequate and constitutional non-discriminatory law enforcement practices to protect African-American citizens of Lafayette Parish;

5. Failing to reprimand and discipline LPD officers, including John Does #1 - #5, who engage in misconduct and use of excessive force;

6. Failing to retrain and/or otherwise control LPD officers, including John Does #1 - #5, who engage in the use of excessive force;

7. Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

8. Failing to adequately investigate complaints and allegations of the use of excessive force and other misconduct by LPD officers, including the complaints and allegations surrounding John Does #1 - #5;

9. Tacitly approving of LPD officers, including John Does #1 - #5, using their power and position to interfere with other citizens' rights;

10. As a matter of both policy and practice, Chief Morgan and the LCG facilitating the misconduct of John Does #1 - #5 by failing to protect civilians from reckless indifference of the LPD's agents, servants, and employees; and

11. Allowing the practice and custom of a "police code of silence," resulting in LPD Officers, including John Does #1 - #5, refusing to report instances of police misconduct of which they are aware.

49.

At all times relevant to this Complaint, the conduct of Chief Morgan, the LCG, and John Does #1 - #5 were in willful, reckless, and callous disregard of J.C.'s and G.C.'s constitutional rights under federal and state law.

50.

As a direct result and proximate result of the conduct of Chief Morgan, the LCG, and John Does #1 - #5, J.C. and G.C. have suffered and continue to suffer extraordinary damages, including the prolonged loss of liberty, emotional distress, and trauma, loss of the enjoyment of life, psychological harm, and pain and suffering, some of which may be permanent, as well as financial losses.

## G.C.'S CAUSES OF ACTION

### Count I
### Federal Constitutional Claims
### Violation of 42 U.S.C. § 1983:
### Use of Excessive Force in Violation of Fourth and Fourteenth Amendment Rights
### (G.C. Against Defendants John Does #1 - #3 in Their Individual Capacities)

51.

As alleged above herein, the actions or in actions of Defendant officers John Doe #1, John Doe #2, and John Doe #3, violated G.C.'s rights under the Fourth and Fourteenth Amendments to be free from the unlawful use of excessive force.

52.

As a result of the actions and inactions of Defendant officers John Doe #1, John Doe #2, and John Doe #3, as alleged herein, G.C. has suffered damages including: (1) the loss of liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

### Count II
### Federal Constitutional Claims

**Violation of 42 U.S.C. § 1983:**
**Failure to Intervene/Bystander Liability**
**(G.C. Against Defendants John Doe #2 and John Doe #3 in Their Individual Capacities)**

53.

As alleged above herein, Defendant officers John Doe #2 and John Doe #3 failed to intervene to prevent the deprivation of G.C.'s constitutional right to be free from the use of excessive force.

54.

As Defendant officer John Doe #1 beating G.C. and violating his constitutional right to be free from the use of excessive force, Defendant officers John Doe #2 and John Doe #3 were present at the scene and were both located in close proximity to John Doe #1 and G.C.

55.

Defendant officers John Doe #2 and John Doe #3 saw and observed the constitutional violations being committed by Defendant John Doe #1.

56.

Defendant officers John Doe #2 and John Doe #3 knew that John Doe #1's actions were in violation of G.C.'s constitutional rights.

57.

Defendant officers John Doe #2 and John Doe #3 both had sufficient time and a reasonable opportunity to prevent and/or stop John Doe #1 from violating G.C.'s constitutional right to be free from the use of excessive force.

58.

Instead of attempting to take some reasonable measures to prevent or stop Defendant John Doe #1 from violating and/or continuing to violate G.C.'s constitutional right to be free from the

use of excessive force, John Doe #2 and John Doe #3 held down G.C. so as to help and allow John Doe #1 to continue violating G.C.'s constitutional right to be free from the use of excessive force.

59.

John Doe #2 and John Doe #3 chose not to act so as to stop or prevent the constitutional violations being committed by John Doe #1 against G.C.

60.

As a result of the actions and inactions of Defendant officers John Doe #2 and John Doe #3, G.C. has suffered damages including: (1) the loss of liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count III**
**Federal Constitutional Claims**
**Violation of 42 U.S.C. § 1983:**
**Failure to Intervene/Bystander Liability**
**(G.C. Against Defendants John Doe #4 and John Doe #5 in Their Individual Capacities)**

61.

As alleged above herein, Defendant officers John Doe #4 and John Doe #5 failed to intervene to prevent the deprivation of G.C.'s constitutional right to be free from the use of excessive force.

62.

As Defendant officer John Doe #1 was beating and punching G.C. on the ground while G.C. was being held down by John Doe #2 and John Doe #3, Defendant officers John Doe #4 and John Doe #5 were present at the scene and were both located in close proximity to John Does #1 - #3 and G.C.

63.

Defendant officers John Doe #4 and John Doe #5 saw and observed the constitutional violations being committed by Defendant John Does #1 - #3.

64.

Defendant officers John Doe #4 and John Doe #5 knew that Defendant officers John Doe #1 - #3's actions were in violation of G.C.'s constitutional rights.

65.

Defendant officers John Doe #4 and John Doe #5 both had sufficient time and a reasonable opportunity to prevent and/or stop John Doe #1 - #3 from violating G.C.'s constitutional right to be free from the use of excessive force.

66.

Instead of attempting to take some reasonable measures to prevent or stop Defendant John Does #1 - #3 from violating and/or continuing to violate G.C.'s constitutional right to be free from the use of excessive force, John Doe #4 and John Doe #5 stood guard over John Does #1 - #3 and chose not to act so as to stop or prevent the constitutional violations being committed by John Does #1 - #3 against G.C.

67.

As a result of the actions and inactions of Defendant officers John Doe #4 and John Doe #5, G.C. has suffered damages including: (1) the loss of liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count IV**
**Federal Constitutional Claims**
**Violation of 42 U.S.C. § 1983:**
***Monell* Claims**
**(G.C. Against Defendant Chief Morgan in His Official Capacity and Defendant LCG)**

68.

The actions or in actions of the LCG and Chief Morgan in his official capacity as the chief of police for the LPD, as alleged in this Complaint, with respect to Chief Morgan's and LCG's failure to properly and adequately train, supervise, and discipline Defendant officers John Does #1 - #5 violated G.C.'s rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from the unlawful use of force, directly or proximately causing G.C.'s injuries.

69.

The actions or inactions of the LCG and Chief Morgan, as alleged in this Complaint, violated G.C.'s Fourth and Fourteenth Amendments Rights to the U.S. Constitution, directly or proximately causing his injury and suffering by the LCG's and Chief Morgan's approval, use of, and/or failure to correct the unconstitutional policies, practices, patterns, and/or customs of the LPD with respect to making decisions to arrest, and effecting the arrest of African Americans.

70.

The LCG and Chief Morgan permitted, encouraged, tolerated, and knowingly acquiesced in an official pattern, practice or custom of LPD officers, including LPD officers John Does #1 - #5, of violating the constitutional rights of the public at large, including G.C.

71.

The LCG and Chief Morgan had been put on notice of the need for policy and training in the use of excessive force and race-based policing due to the numerous past injuries and deaths of persons arrested by LPD officers.

72.

The actions of LPD officers John Does #1 - #5, as described herein, were unjustified, unreasonable, unconstitutional, excessive and grossly disproportionate to the actions of G.C.—

who was not armed and did not pose a threat—and constituted an unreasonable search and seizure effectuated through the use of excessive force and a deprivation of G.C.'s constitutional rights secured to him by the Fourth and Fourteenth Amendments of the United States Constitution.

73.

The actions and inactions of LPD officers John Does #1 - #5 described herein were in direct violation of the constitution, law and regulations of the United States and the State of Louisiana.

74.

The LCG and Chief Morgan condoned, approved, ratified, facilitated and knowingly acquiesced in the actions of LPD officers John Does #1 - #5 described herein by failing to properly investigate, adequately discipline and hold accountable LPD officers John Does #1 - #5 for their actions.

75.

The violations of G.C.'s constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, his damages, and/or the conduct of John Does #1 - #5 were directly and proximately caused by the actions and/or inactions of the LCG and Chief Morgan, who has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

    a.  Use of force by police officers;

    b.  Police officers' duties and responsibilities to engage in proper de-escalation techniques;

    c.  The proper exercise of police powers, including not limited to the making of an arrest and the use of force;

    d.  Police officers' duties not to un-necessarily use force;

e.   The failure to identify and take remedial or disciplinary action against officers who were the subject of prior civilian or internal complaints of misconduct;

f.   Failing to retrain and/or otherwise control officers who engage in excessive force and/or unjustified shooting against civilians;

g.   Failing to follow appropriate policies and procedures to address and correct repeated use of excessive force;

h.   The hiring and retention of officers who are unqualified for their employment positions;

i.   Failure to require, discipline, and supervise their officers for not reporting illegal, impermissible, improper, or any other conduct of other officers that is unbefitting of an officer or violates department policies and protocols;

j.   Officers' use of their status as a police officer to employ the use of force or to achieve ends not reasonably related to their law enforcement duties;

k.   Officers' decision to target individuals because of previous encounters with said individual;

l.   The failure of officers to follow established policies, procedures, directive, and instructions regarding arrests, use of force, and institution of criminal charges under such circumstances as presented by this case;

m.   The failure to properly sanction or discipline deputies who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other officers;

n.   As a matter of both policy and practice, LCG and Chief Morgan facilitating the type of misconduct alleged herein by failing to protect civilians from reckless indifference or their departments' agents, servants, and employees.

76.

The LCG and Chief Morgan had actual or constructive notice of the deficiencies with the policies, practices and customs of the LPD that make officer misconduct a foreseeable consequence.

77.

The LCG and Chief Morgan knew, must have known, or should have known that the above-referenced policies, practices, and/or customs, would likely lead to serious injury or death to citizens and that such injuries were foreseeable; yet, disregarded that risk.

78.

The aforementioned policies, practices and customs were inadequate in relation to the specific tasks LPD police officers must routinely perform and with respect to activities where there is an obvious need for proper policies, practices and customs and therefore, illustrated its deliberate indifference and/or reckless disregard to the consequences of officer misconduct.

79.

The LCG's and Chief Morgan's above referenced policies, practices and/or customs violated the G.C.'s constitutional rights; and said policies, practices and/or customs were the moving force behind and proximate cause of said violations.

80.

The LCG's and Chief Morgan's above referenced policies, practices and/or customs demonstrated a deliberate indifference to the constitutional rights of the public, including G.C.'s, and was the proximate cause of the injuries and damages sustained by G.C., and evidenced a reckless or callous indifference to the federally protected rights of G.C.

81.

By failing to recognize or correct the deficiencies with his policies, practices and customs, the LCG and Chief Morgan consciously disregarded the known and foreseeable consequences thereof.

82.

The LCG's and Chief Morgan's deliberately indifferent policies, practices and customs were the moving force behind G.C.'s injuries and the deprivation of his constitutional rights.

83.

There is a direct causal link between the policies, practices and customs of the LCG and Chief Morgan and the injuries to and violation of G.C.'s constitutional rights.

84.

As a direct and proximate result of the foregoing policies, practices and customs of the LCG and Chief Morgan, the violation of the constitutional rights of the public, including G.C., by LPD officers John Does #1 - #5 was substantially certain to occur.

85.

As a result of the foregoing policies, practices and customs of the LCG and Chief Morgan, G.C. has suffered damages including: (1) the loss of his liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count V**
**State Law Claims**
**(G.C. Against Defendant Chief Morgan in His Individual and Official Capacity and Defendant LCG)**

86.

The LCG and Chief Morgan are responsible and liable to G.C. for the damages and injuries he has suffered as a result of Defendant officers John Doe #1 - #3's actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"; Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; Article 2317,

which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody"; and Article 2320, which provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed…responsibility only attaches, when the masters or employers…might have prevented the act which caused the damage, and have not done it."

87.

The actions and/or inactions of Defendant officers John Does #1 - #3, for which Chief Morgan and the LCG are responsible for under the law of the State of Louisiana, constitute the torts of:

a.   Battery;

b.   Assault; and

b.   Intentional Infliction of Emotional Distress

88.

The actions and/or inactions of Chief Morgan, as alleged herein, constitute the state law torts of:

a.   Intentional Infliction of Emotional Distress;

b.   Negligent Hiring;

c.   Negligent Retention;

d.   Negligent Supervision; and

e.   Malfeasance in Office

89.

As a result of the above torts committed by the Defendant officers John Does #1 - #3, Chief Morgan, and the LCG, G.C. has suffered damages including: (1) the loss of his liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

### Count VII
### State Law Claims
### (G.C. Against Defendants John Doe #1, John Doe #2, and John Doe #3)

90.

Defendant officers John Doe #1, John Doe #2, and John Doe #3 are responsible and liable to G.C. for the damages and injuries he has suffered as a result of said Defendants' actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"; Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; and Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

91.

The actions and/or inactions of Defendant officers John Does #1 - #3 constitute the state law torts of:

c.     Battery;

d.     Assault; and

b.     Intentional Infliction of Emotional Distress

92.

As a result of the above torts committed by the Defendant officers John Does #1 - #3, G.C. has suffered damages including: (1) the loss of his liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

### J.C.'S CAUSES OF ACTION

**Count I**
**Violation of 42 U.S.C. § 1983:**
**Violation of J.S.'s Fourth and Fourteenth Amendment**
**Right to be Free from Unlawful Searches and Seizures**
**(J.C. Against Defendants John Does #1 - #5)**

93.

As alleged above herein, J.C. was merely standing in line to enter a bowling alley when one or more of the Defendant LPD police officers (John Does #1 - #5) walked up to J.C. in line and immediately arrested him without any probable cause. There were no complaints that J.C. engaged or was engaging in illegal activity. There were no complaints that J.C. had a gun or any weapon on his person. No citizens or LPD officers ever saw J.C. engage in any illegal activity.

94.

Nevertheless, one or more of the Defendant LPD officers searched, seized, and arrested J.S. on a mere hunch that J.S. may have fit the description of some unknown individual that was reported to have a gun around that area sometime earlier in the evening.

95.

As a result of the actions and inactions of Defendant officers John Does #1 - #5, as alleged herein, J.C. was arrested without probable cause and has suffered damages including: (1) the loss of his liberty and freedom; (2) mental and emotional injury; (3) pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count II**
**Federal Constitutional Claims**
**Violation of 42 U.S.C. § 1983:**
*Monell* **Claims**
**(J.C. Against Defendant Chief Morgan in His Official Capacity and Defendant LCG)**

96.

As alleged above herein, J.C. was merely standing in line to enter a bowling alley when one or more of the Defendant LPD police officers (John Does #1 - #5) walked up to J.C. in line and immediately arrested him without any probable cause. There were no complaints that J.C. engaged or was engaging in illegal activity. There were no complaints that J.C. had a gun or any weapon on his person. No citizens or LPD officers ever saw J.C. engage in any illegal activity.

97.

Nevertheless, one or more of the Defendant LPD officers arrested J.C. on a mere hunch that J.C. may have fit the description of some unknown individual that was reported to have a gun around that area sometime earlier in the evening.

98.

The actions or in actions of the LCG and Chief Morgan in his official capacity as the chief of police for the LPD, as alleged in this Complaint, with respect to Chief Morgan's and LCG's failure to properly and adequately train, supervise, and discipline Defendant officers John Does #1 - #5 violated J.C.'s rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from the unlawful searches and seizures, directly or proximately causing J.C.'s injuries.

99.

The actions or inactions of the LCG and Chief Morgan, as alleged in this Complaint, violated J.C.'s Fourth and Fourteenth Amendments Rights to the U.S. Constitution, directly or proximately causing his injury and suffering by the LCG's and Chief Morgan's approval, use of,

and/or failure to correct the unconstitutional policies, practices, patterns, and/or customs of the LPD with respect to making decisions to arrest, and effecting the arrest of African Americans.

100.

The LCG and Chief Morgan permitted, encouraged, tolerated, and knowingly acquiesced in an official pattern, practice or custom of LPD officers, including LPD officers John Does #1 - #5, of violating the constitutional rights of the public at large, including J.C.

101.

The violations of J.C.'s constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, his damages, and/or the conduct of John Does #1 - #5 were directly and proximately caused by the actions and/or inactions of the LCG and Chief Morgan, who has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in the areas of:

a.   Legal cause to stop, detail, and/or arrest a citizen;

b.   Use of force by police officers;

c.   Police officers' duties and responsibilities to engage in proper investigative techniques;

e.   The proper exercise of police powers, including not limited to the making of an arrest, the use of force, and the bringing of criminal charges;

f.   Failure to promulgate, train, and enforce an adequate and constitutional non-discriminatory law enforcement practices to protect African-American citizens of Lafayette Parish;

e.   The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

f.   The hiring and retention of officers who are unqualified for their employment positions;

g.   Police officers' use of their status as police officers to employ the use of force or making arrests to achieve ends not reasonably related to their police duties;

h.   The failure of police officers to follow established policies, procedures, directive, and instructions regarding arrests and engaging in the use of force;

i.   The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other LPD police officers; and

j.   Facilitating misconduct resulting in failing to protect civilians from reckless indifference of LCG's agents, servants, and employees in its Police Department as a matter of policy and practice.

102.

As alleged above herein, the actions or in actions of Defendant officers John Does #1 - #5 violated J.C.'s rights under the Fourth and Fourteenth Amendments to be free from unlawful searches and seizures.

103.

As a result of the actions and inactions of Defendant officers John Does #1 - #5, as alleged herein, J.C. was arrested without probable cause and has suffered damages including: (1) the loss of liberty and freedom; (2) mental and emotional injury; (3) pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count III**
**State Law Claims**
**(J.C. Against Defendant Chief Morgan in His Individual and Official Capacity and Defendant LCG)**

104.

The LCG and Chief Morgan are responsible and liable to J.C. for the damages and injuries he has suffered as a result of Defendant officers John Doe #1 - #5's actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair

it"; Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody"; and Article 2320, which provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed…responsibility only attaches, when the masters or employers…might have prevented the act which caused the damage, and have not done it."

105.

The actions and/or inactions of Defendant officers John Does #1 - #5, for which Chief Morgan and the LCG are responsible for under the law of the State of Louisiana, constitute the torts of:

a.   Battery;

b.   Assault;

c.   Intentional Infliction of Emotional Distress;

d.   False Arrest; and

e.   Abuse of Process

106.

The actions and/or inactions of Chief Morgan, as alleged herein, constitute the state law torts of:

a.   Intentional Infliction of Emotional Distress;

b.   Negligent Hiring;

c.   Negligent Retention;

    d.  Negligent Supervision; and

    e.  Malfeasance in Office

107.

As a result of the above torts committed by the Defendant officers John Does #1 - #5, Chief Morgan, and the LCG, J.C. has suffered damages including: (1) the loss of his liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

<strong>Count IV<br>State Law Claims<br>(J.C. Against Defendants John Does #1 - #5)</strong>

108.

Defendant officers John Does #1 - #5 are responsible and liable to J.C. for the damages and injuries he has suffered as a result of said Defendants' actions and/or inactions pursuant to Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"; Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill"; and Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

109.

The actions and/or inactions of Defendant officers John Does #1 - #5 constitute the state law torts of:

    a.    Battery;

b.   Assault;

c.   Intentional Infliction of Emotional Distress;

d.   False Arrest; and

e.   Abuse of Process

110.

As a result of the above torts committed by the Defendant officers John Does #1 - #5, J.C. has suffered damages including: (1) the loss of his liberty and freedom; (2) mental and emotional injury; (3) pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**JURY TRIAL DEMAND**

111.

Petitioner requests a trial by jury.

**PRAYER FOR RELIEF**

112.

The Petitioner respectfully requests:

a.   Compensatory damages as to all Defendants;

b.   Special Damages as to all Defendants;

c.   Punitive damages as to all Defendants sued in their individual capacity;

d.   Reasonable attorneys' fees and costs as to all Defendants;

e.   Such other and further relief as may appear just and appropriate

**WHEREFORE**, Gerald Celestine, individually and on behalf of his minor children, J.S. and C.S., prays that a copy of this Complaint is served upon all of the Defendants named herein, and that after all proceedings a judgment is rendered in favor of Petitioner and against all

Defendants jointly, severally, and/or *in solido* for all relief deemed equitable under the law including attorney's fees and costs.

Respectfully submitted,

*/s/ Ronald S. Haley. Jr._____*
Ronald S. Haley, Jr. (#30900)
**HALEY & ASSOCIATES**
**ATTORNEYS AT LAW, LLC**
8211 Goodwood Blvd., Suite E
Baton Rouge, LA 70806
Office: (225) 663-8869
Facsimile: (888) 900-9771
rhaley@ronaldhaleylawfirm.com

Dedrick A. Moore (#30329)
**DEDRICK A. MOORE**
**ATTORNEYS AT LAW, LLC**
4962 Florida Blvd.
Baton Rouge, LA 70806
Phone: (225) 412-0412
Fax: (225) 412-0414

Lewis O. Unglesby (#12498)
Lance C. Unglesby (#29690)
Adrian M. Simm, Jr. (#36673)
**UNGLESBY LAW FIRM**
246 Napoleon Street
Baton Rouge, LA 70802
Phone: (225) 387-0120
Facsimile: (225) 335-4355
Lisa@unglesbylaw.com
Lance@unglesbylaw.com
Adrian@unglesbylaw.com

*Counsel for Petitioner, Gerald*
*Celestine, Individually and On*
*Behalf of His Minor Children, J.C.*
*and G.C.*